IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| CAROLYN A. LUZADER, a citizen and resident of Anderson County, Tennessee, residing at 104 Balsam Road, Oak Ridge, TN 37830, | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:04-CV-358 |
| DR. DIANA WILSON, a citizen and resident of Fort Bend, Texas, residing at 2709 Lee Circle, Rosenberg, TX 77471. | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of the motion for summary judgment filed by defendant, Dr. Diana Wilson ("Dr. Wilson"), [doc. 11]. Plaintiff, Carolyn A. Luzader ("Mrs. Luzader"), has not responded to the motion. "Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought." L.R. 7.2, E.D. Tenn. The complaint for medical malpractice was originally filed in the Circuit Court for Anderson County, Tennessee, and was removed to this court on the basis of diversity of citizenship and amount in controversy [doc. 1].

The court has determined that oral argument is unnecessary, and the motion is ripe for the court's consideration. For the reasons stated herein, the motion will be granted, and this case will be dismissed.

I.

*Factual Background*

Mrs. Luzader first saw Dr. Wilson on January 27, 2003, on a referral by Dr. Jeff Grabenstein for evaluation of low back pain that radiated down her right leg and that also involved the right buttock, lateral thigh and numbness in her right foot.[1] The pain had progressed over 18 months to the point of being moderate to severe and present most of the time. An MRI dated December 21, 2002, showed a right L4-L5 disc protrusion with displacement of the right L5 nerve root. Dr. Wilson discussed these findings with Mrs. Luzader and recommended conservative treatment.

When the conservative treatment was not successful and the pathology had progressed, Mrs. Luzader made the decision to undergo a micro lumbar discectomy. Dr. Wilson discussed with Mrs. Luzader the risks of the surgery, which included recurrent disc herniation. The surgery was performed on June 16, 2003, at the Methodist Medical Center of Oak Ridge, Tennessee. Dr. Wilson performed a right micro lumbar discectomy at L4-L5, which is sometimes referred to on Mrs. Luzader as L5-S1.

Mrs. Luzader initially reported good relief from her symptoms and returned to work approximately one and a half weeks after the surgery. About three to four weeks post

---

[1] The facts are taken from Dr. Wilson's supporting memorandum as Mrs. Luzader has not responded to the motion for summary judgment and therefore has not provided her own statement of the facts.

surgery, the symptoms recurred with a progression in severity. An MRI was performed August 7, 2003, and Dr. Wilson recommended a right transforaminal epidural steroid injection that was performed on August 18, 2003. The injection was performed by Dr. James Wike who informed Mrs. Luzader that she had an extra vertebra or sacralized L5 vertebra that could be considered an L6.

Mrs. Luzader saw Dr. Richard Boyer ("Dr. Boyer"), a Knoxville neurosurgeon, in October 2003. Dr. Boyer told Mrs. Luzader that based on his review of the MRI, his impression was that the surgery had been performed on the L5-S1 level instead of the L4-L5 level. Mrs. Luzader did not inform Dr. Boyer that she had been told about having an extra vertebra.

For reasons involving insurance, Mrs. Luzader was referred to Dr. Boyer's partner, Dr. Stephen Natelson ("Dr. Natelson"), who saw Mrs. Luzader on December 1, 2003. Dr. Natelson believed the main problem was spinal stenosis at L4-L5 and recommended a decompressive laminectomy. On December 9, 2003, Dr. Natelson performed a laminectomy with foraminotomy, and he used the same incision made by Dr. Wilson. During the procedure, it was noted that Mrs. Luzader had a bulging disc attached to the dura at L4-L5 that was removed. This bulging disc was believed to be the source of Mrs. Luzader's symptoms. X-rays taken during the surgery revealed the presence of a "transitional vertebra" that was referred to as S1 with the surgical probe placement being identified at the L5-S1 level.

Mrs. Luzader has reported that since the surgeries the terrible leg and hip pain she had prior to the surgeries is gone as well as the pain she experienced with walking and standing. Currently, Mrs. Luzader's complaints are limited to leg pain with prolonged sitting that is relieved by standing. In her complaint, Mrs. Luzader alleges that Dr. Wilson "inexplicably" operated at the L5-S1 level rather than the L4-L5. She contends that Dr. Wilson was negligent and deviated from the standard of care in Anderson County, Tennessee by failing to perform the proper procedure and by failing to properly advise her that Dr. Wilson was going to operate on a different section of her back.

II.

*Summary Judgment Standard*

As referenced above, Mrs. Luzader has not responded to the motion for summary judgment. However, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991); *see also Stough v. Mayville Cmty. Schs.*, 138 F.3d 612 (6th Cir. 1998). At a minimum, the court must examine the motion and determine whether the movant has met the initial burden of demonstrating the absence of a genuine issue of material fact. *Carver*, 946 F.2d at 454-55.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, admissions on file,

4

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc*., 862 F.2d 597, 601 (6th Cir. 1988) (quoting Fed. R. Civ. P. 56(c)). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Liberty Lobby,* 477 U.S. at 251-52, 106 S.Ct. at 2512.

III.

*Applicable Law*

The acts about which Mrs. Luzader complains occurred in Tennessee, and therefore the law of Tennessee governing medical malpractice applies. The common law concerning medical malpractice in Tennessee is codified at Tenn. Code Ann. § 29-26-115.[2] *Hurst v. Dougherty*, 800 S.W.2d 183, 185 (Tenn. Ct. App. 1990). "A plaintiff is required to prove by expert testimony the standard of care, that defendant deviated from that standard

---

[2] Tenn. Code Ann. § 29-26-115 provides in pertinent part:
(a) In a malpractice action the claimant shall have the burden of proving by evidence as provided by subsection (b):
(1) The recognized standard of acceptable professional practice in the profession and specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

6

and as a proximate result of the defendant's negligent act or omission the plaintiff suffered injuries which would not otherwise have occurred." *Id*. The basic elements of a malpractice action must "be proven by testimony of experts who were licensed and practicing in Tennessee or a contiguous bordering state during the year preceding the date that the alleged injury or wrongful act occurred." *Payne v. Caldwell*, 796 S.W.2d 142, 143 (Tenn. 1990).

> Under Tennessee law, a physician's duty is to exercise reasonable care and diligence. He must exercise his best judgment regarding treatment, and is not guilty of malpractice if he chooses a course of treatment supported by other physicians in good standing. *Truan v. Smith*, 578 S.W.2d 73, 75-76 (Tenn. 1979). A physician is not the insuror of the patient; he is only liable for negligence, and negligence is not presumed from the fact that the treatment is unsuccessful. Liability for malpractice depends on whether or not the physician is lacking in and fails to exercise the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession. *Watkins v. United States*, 482 F. Supp. 1006, 1012 (M.D. Tenn. 1980). There is no presumption of negligence; rather, the law presumes the physician has discharged his full duty. *Redwood v. Raskind*, 49 Tenn. App. 69, 350 S.W.2d 414 (1961). Moreover, negligence may not be presumed from the mere fact of injury. *Johnson v. Lawrence*, 720 S.W.2d 50, 56 (Tenn. Ct. App. 1986). An honest mistake in judgment is not sufficient to find a physician negligent. *Perkins v. Park View Hosp.*, 61 Tenn. App. 458, 456 S.W.2d 276 (1970).

*Dougherty*, 800 S.W.2d at 185 (quoting *Ward v. United States*, 838 F.2d 182, 186 (6th Cir. 1988)).

As a general rule, summary judgment in a malpractice case is not appropriate because of factual disputes concerning whether there was negligence; however, there are

times when summary judgment is appropriate. *Bryant v. Bauguss*, No. 03A01-9603-CV-00105, 1996 WL 465539 (Tenn. Ct. App. Aug. 16, 1996). The Tennessee Supreme Court set out in *Bowman v. Henard*, 547 S.W.2d 527 (Tenn. 1977) the principles to be applied when considering a motion for summary judgment in a malpractice case. The Court stated:

> In summary we hold that, in those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, *affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise.* In those cases wherein the acts are complained of are within the ken of the common layman, the affidavit of medical experts may be considered along with all other proof, but are not conclusive.

*Id.* at 531 (emphasis added). Ultimately, the rule requires that a malpractice plaintiff faced with a summary judgment motion must come forward "with expert opinion on the issues of negligence and proximate cause to make out a genuine issue of material fact, or face the likelihood of summary judgment in favor of the defendants." *Dolan v. Cunningham*, 648 S.W.2d 652, 653 (Tenn. Ct. App. 1982). "Summary judgment in a medical malpractice case may be appropriate where the defendant produces expert proof that completely refutes the plaintiff's allegations of negligence and the plaintiff does not produce rebuttal proof by expert testimony." *Dunham v. Stones River Hosp., Inc.*, 40 S.W.3d 47, 51 (Tenn. Ct. App. 2000) (citing *Dolan*, 648 S.W.2d at 653).

8

Pursuant to Tenn. Code Ann. § 29-26-115, there are five substantive requirements for expert affidavits in a medical malpractice case.

> The affiant must demonstrate that he or she meets the geographic and durational residence and practice requirements. Second, the affiant must demonstrate that he or she practices in a profession or specialty that makes the affiant's opinion relevant to the issues in the case. Third, the affiant must demonstrate that familiarity with the recognized standard of professional practice in the community where the defendant practices or in similar communities. Fourth, the affiant must give an opinion concerning whether the defendant physician met or failed to meet the relevant standard of professional practice. Finally, the affiant must opine whether the defendant physician's negligence more likely than not caused the patient injuries that he or she would not otherwise have suffered.

*Church v. Perales*, 39 S.W.3d 149, 166 (Tenn. Ct. App. 2000).

IV.

*Analysis*

In support of her motion for summary judgment, Dr. Wilson has submitted her own affidavit along with the affidavits of Dr. William A. Tyler ("Dr. Tyler") [doc. 14] and Dr. Peter G. Emanuel ("Dr. Emanuel") [doc. 13]. Dr. Wilson's affidavit states that she is a neurosurgeon licensed to practice in Tennessee; that she is familiar with the standard of care in Oak Ridge, Tennessee; that she did not deviate from that standard of care when treating Mrs. Luzader; and that she operated on the appropriate vertebra at L4-L5, also referred to as L5-S1 with Mrs. Luzader. Dr. Wilson also provided factors for why Mrs. Luzader

experienced the recurrent disc herniation that were not the result of her treatment of Mrs. Luzader.

The affidavit of Dr. Tyler provides that he has been a licensed and practicing neurosurgeon in Tennessee since 1976; that he is familiar with the standard of care for the procedure Dr. Wilson performed on Mrs. Luzader, a micro lumbar discectomy; that Dr. Wilson's treatment of the Mrs. Luzader was in accordance with that standard of care; that Dr. Wilson operated at the correct vertebral level; that nothing Dr. Wilson did or failed to do caused injury or harm to Mrs. Luzader; and that nothing Dr. Wilson did or failed to do required Mrs. Luzader to have a subsequent surgery.

The Affidavit of Dr. Emanuel indicates that he has been a licensed physician practicing radiology in Tennessee since 1997; that he reviewed the imaging studies done on Mrs. Luzader and those studies show she has a "transitional vertebra"; that in his opinion, Dr. Wilson operated on the correct vertebral level, the site of Mrs. Luzader's most significant pathology; and that in his opinion, the subsequent surgery by Dr. Natelson was performed at the same level at which Dr. Wilson operated.

All of these affidavits meet the requirements set forth in Tenn. Code Ann.§ 29-26-115. *Id*. Dr. Wilson has presented expert proof that refutes all three of the elements that Mrs. Luzader must prove in this malpractice case: the standard of care, the breach of the standard, and proximate cause. *See Bryant*, 1996 WL 465539 at *3. Mrs. Luzader has failed to present any rebuttal proof, expert or otherwise. At this stage of summary judgment, a

10

Case 3:04-cv-00358   Document 17   Filed 05/06/05   Page 10 of 12   PageID #: 54

plaintiff cannot rely on the pleadings to defeat summary judgment. *See, e.g., Maki v. Laakko,* 88 F.3d 361, 364 (6th Cir. 1996) ("To preclude summary judgment, the nonmoving party must present evidence, beyond h[er] pleadings and h[er] own conclusory statements, to establish the existence of specific triable facts."). In addition, the summary judgment process in a medical malpractice case requires that a plaintiff present through expert opinion testimony facts that create a material issue of fact concerning the causal connection between the physician's alleged negligence and the plaintiff's injury. *See Bryant*, 1996 WL 465539 at *5 ("Once a defendant has filed a properly supported motion for summary judgment, the failure of the plaintiff to raise an issue of material fact regarding the proximate cause of the plaintiff's injuries renders his or her case ripe for summary judgment."). Mrs. Luzader has failed to make the required showing. Accordingly, summary judgment in favor of Dr. Wilson is appropriate.

Therefore, Dr. Wilson's motion for summary judgment will be granted, and this case will be dismissed. An order reflecting this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

12